Cynthia G. **EVANS**, Plaintiff,

v.

**KEYSTONE CONSOLIDATED INDUSTRIES, INC.**, a Delaware Corporation, doing business under the name of Keystone Steel & Wire Company; and Colleen Walters and Kenneth Schorr, Individually and as Employees and Agents of Keystone Consolidated Industries, Inc., Defendants.

No. 93–1499.

United States District Court, C.D. Illinois.

May 4, 1995.

---

Donald R. Jackson, Peoria, IL, for plaintiff.

Stuart I. Cohen, Jeffrey Alan Ryva, Gerard A. McInnis, Husch & Eppenberger, Peoria, IL, for Keystone Consol. Industries, Inc.

James E. Konsky, John R. Pusey, Vonachen Lawless Trager & Slevin, Peoria, IL, for Colleen Walters and Kenneth Schorr.

## ORDER

McDADE, District Judge.

Before the Court is a Report and Recommendation of United States Magistrate Judge Robert J. Kauffman that Plaintiff's Motion to Remand [Doc. # 14] be denied, that Defendants' Motions to Dismiss [Docs. # 6 and # 8] be allowed as to Count One and denied as to Counts Two and Three, and that the pendant state law claims alleged in Counts Two and Three be remanded to the Circuit Court for the Tenth Judicial Circuit, Peoria County for further proceedings. Defendant Keystone Consolidated Industries, Inc. ("Keystone") objects to the portion of the Magistrate Judge's recommendation relating to Counts Two and Three. Defendants Colleen Walters and Kenneth Schorr ("Walters" and "Schorr") object to the portion of the Magistrate Judge's recommendation relating to Counts Two and Three, and his reliance upon *Bushnell v. Caterpillar, Inc.*, C.D.Ill. 88–1074 (Nov. 21, 1988). The Court, therefore, shall undertake a *de novo* determination of those portions of the recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(C).

The facts pertinent to the motions before the Court are set out in the report and recommendation and are not disputed by the parties. Plaintiff is a former employee of Keystone who was fired as a result of an incident which occurred on October 24, 1992, at Keystone. Plaintiff, although not scheduled to work, was on Keystone's premises in the early morning hours of October 24, 1992.

At approximately 1:30 a.m. on this day, Defendant Schorr was working in his capacity as a security guard at Keystone. At this time, Schorr received an anonymous call in which the caller stated that Schorr would find interesting what was occurring in the wire mill foreman's locker room. Schorr reported this call to his dispatcher, requested that a second security guard assist him in investigating the call, and proceeded to the wire mill foreman's locker room via a patrol vehicle. En route to the locker room, Schorr received a second call which stated substantially the same message as the previous call referring to the locker room. Schorr was joined by Defendant Walters, a female security guard at Keystone, outside the locker room. Schorr and Walters entered the locker room, with Schorr leading the way. Once inside, Schorr and Walters discovered Plaintiff and a fellow Keystone employee together. Just how together is disputed.

Schorr and Walters immediately reported both orally and in writing to management the events which they observed in the locker room. Schorr stated that upon entering the locker room, he observed Plaintiff and a male co-worker having sexual intercourse on a bench. Schorr stated that a Keystone employee was lying on his back on a bench and Plaintiff was bouncing up and down on his penis. Walters stated that upon entering the locker room, she observed Plaintiff straddling a co-worker who was lying on his back on a bench. Walters did not state that Plaintiff was having sex with a fellow employee. As a result of the incident, Plaintiff was discharged from the employ of Keystone.

Plaintiff vehemently denies having sex in the locker room and filed the present case in response to her being discharged. Plaintiff filed her three-count Complaint in state court. Count One claims that Keystone breached its employment contract with Plaintiff. Count Two states a claim for defamation against Schorr and Walters based upon the oral and written assertions they made concerning the October 24, 1992, incident in the locker room. Count Three states a claim for defamation against Keystone for the statements of Schorr and Walters based upon a respondeat superior theory. Defen-

dants removed the case to this court arguing the existence of federal question jurisdiction. Plaintiff filed a motion to remand the case to state court. Defendants filed motions to dismiss all three counts of the Complaint. These motions are now before the Court via the report and recommendation of·the Magistrate Judge.

Initially, the Court notes that neither Plaintiff nor Defendants have objected to the portion of the Magistrate Judge's report which recommended that Plaintiff's Motion to Remand [Doc. # 14] be denied. Similarly, neither Plaintiff nor Defendants have objected to the portion of the Magistrate Judge's report which recommends that Defendants' Motions to Dismiss [Docs. # 6 and # 8] be granted as to Count One of the Complaint. The Court, having reviewed the report and recommendation and the record in this case, finds that the Magistrate Judge's recommendation to be well reasoned as to both Plaintiff's motion to remand and Defendants' motion to dismiss Count One. Accordingly, the Court adopts the Magistrate Judge's recommendation in both these regards.

Both Defendant Keystone and Defendants Walters and Schorr have objected to the Magistrate Judge's Report regarding the issue of preemption in Counts Two and Three. The Magistrate Judge found that Plaintiff's claims of defamation in Counts Two and Three were not preempted by § 301 of the Labor Management Relations Act ("the LMRA"), 29 U.S.C. § 185. As such, the Magistrate Judge found that original subject matter jurisdiction over these counts was lacking and recommended that supplemental jurisdiction not be exercised and that these counts be remanded to the state court from whence they came. The Magistrate Judge, in so finding, cited the unpublished and unreported case *Bushnell v. Caterpillar, Inc.,* 88–1074 (C.D.Ill. Nov. 21, 1988) authored by District Judge Michael M. Mihm. The Magistrate Judge found the facts in *Bushnell* to be indistinguishable from the present case and, in the absence of binding precedent from either the Supreme Court or the Seventh Circuit, recommended that it be followed.

Defendants Schorr and Walters object to the Magistrate Judge's recommendation by arguing that reliance upon *Bushnell* was misplaced, issues involving publication and privilege require the interpretation of the Collective Bargaining Agreement ("the CBA"), a number of courts have found that claims of defamation are preempted by the LMRA, and the Seventh Circuit and the Supreme Court have found similar torts to be preempted by the LMRA. Defendant Keystone objects to the Magistrate Judge's recommendation by arguing that the determination of whether the individual Defendants were acting within the scope of a privilege requires the determination of whether they exceeded the authority and responsibility conferred upon them by Keystone. Keystone argues that this determination, in turn, requires a review of the CBA to determine Keystone's authority to investigate incidents of employee misconduct. Finally, Keystone points to other courts which have found that defamation claims are preempted by the LMRA and cases within the Seventh Circuit which have found certain torts preempted by the LMRA as persuasive authority for the proposition that Plaintiff's claims of defamation in the present case are preempted by the LMRA. Based upon these objections, the Court shall conduct a *de novo* review of the Magistrate Judge's recommendation as it pertains to the Court's subject matter jurisdiction over Counts Two and Three.

■ A suit filed in state court may be removed to federal district court under the authority of 28 U.S.C. § 1441(a) only if the case could have originally been brought in the federal district court. *Illinois v. Kerr–McGee Chemical Corp.,* 677 F.2d 571, 574 (7th Cir.1982). A defendant may, pursuant to 28 U.S.C. § 1441(b), remove a suit which states a claim founded upon a federal question. Diversity of citizenship is not a concern when removal is based upon federal question jurisdiction. *Mitchell v. Pepsi–Cola Bottlers, Inc.,* 772 F.2d 342, 344 .(7th Cir.1985) *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1266, 89 L.Ed.2d 575 (1986). Defendants have removed the present case ·to this Court on the basis of federal question jurisdiction. Accordingly, the Court must inquire whether the claims set forth in Counts Two and Three

of the Complaint arise under the Constitution, treaties, or laws of the United States. The Court notes that "a federal court may, in some situations, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded her suit so as to couch a federal claim in terms of state law." *Lingle v. Norge Division of Magic Chef, Inc.*, 823 F.2d 1031, 1038 (7th Cir.1987) *rev'd on other grounds by*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Accordingly, if neither Count Two nor Three contain a claim presenting a federal question, the Court is without jurisdiction, and Plaintiff's motion to remand must be granted.

■■■ The Supreme Court stated in *Caterpillar v. Williams:*

> The presence or absence of federal-question jurisdiction is governed by the "well-pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.

482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Accordingly, "a case may not be removed to federal court on the basis of a federal defense, including preemption...." *Id.* at 393, 107 S.Ct. at 2430. However, the doctrine of "complete preemption" holds that:

> The preemptive force of a statute [may be] so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Once an area of state law has been completely preempted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.

*Id.* at 393, 107 S.Ct. at 2430 *quoting Metropolitan Life Ins. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). The complete preemption doctrine is most often applied in cases which raise claims preempted by § 301 of the LMRA. *Jackson v. Southern California Gas Co.*, 881 F.2d 638, 642 (9th Cir.1989). Federal jurisdiction is

provided by § 301 over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). In discussing the preemptive force of § 301, the Supreme Court in *Franchise Tax Bd. v. Construction Laborers Vacation Trust* stated:

> [T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action "for violation of contracts between an employer and a labor organization." Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in absence of § 301.

463 U.S. 1, 23, 103 S.Ct. 2841, 2853–2854, 77 L.Ed.2d 420 (1983). Thus, the resolution of issue of the Court's jurisdiction over the claims made in Counts Two and Three requires the Court to determine whether or not § 301 of the LMRA preempts the Illinois state tort of defamation.

In determining whether or not Plaintiff's Illinois state law claims of defamation are preempted by § 301, the Court's analysis is governed by the Supreme Court's holdings in *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) and *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). In *Lingle*, the Supreme Court held that: "an application of state law is preempted by § 301 ... only if such application requires the interpretation of a collective-bargaining agreement." 486 U.S. at 413, 108 S.Ct. at 1885. In so holding, the Supreme Court in *Lingle* held that "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." 486 U.S. at 409–10. The Supreme Court in *Lingle* added that: [a]s we said in *Allis–Chalmers Corp. v. Lueck*, 471 U.S. at 211, 105 S.Ct. at 1911, 'not every dispute ... tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301....'" 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12. Such preemption policy reduces the probabil-

ity "that individual contract terms might have different meanings under state and federal law." *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 577, 7 L.Ed.2d 593 (1962).

The federal preemption policy does not, however, prevent states from providing employees with substantive rights independent of the collective bargaining agreement. *Lueck*, 471 U.S. at 212, 105 S.Ct. at 1911. Although the preemptive effect of § 301 extends beyond suits alleging contract violations to some suits alleging tort liability, "it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* The Court's focus must then be on "whether the [Illinois tort action for defamation] as applied here confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912.

Neither the Seventh Circuit Court of Appeals nor the Supreme Court have addressed the precise question of whether § 301 preempts a state law claim of defamation. However, numerous federal district courts and courts of appeals in several other circuits have addressed this question. Many of these cases have found that an employee's state law claim of defamation is preempted by § 301 of the LMRA. However, these cases usually involved claims challenging the propriety of the employer's conduct in connection with disciplinary actions under the collective bargaining agreement, or where the defamatory conduct was alleged to have occurred in the context of grievance or arbitration proceedings. *See Monsour v. Delco Remy*, 851 F.Supp. 245, 246 (S.D.Miss.1994) (collecting cases); *DeCoe v. General Motors Corp.*, 32 F.3d 212 (6th Cir.1994) (CBA incorporated a sexual harassment policy which imposed a duty upon the employer to identify and resolve sexual harassment complaints); *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522 (10th Cir.1992) (plaintiffs claimed that they were "wrongly interrogated, abused and coerced"); *Bagby v. General Motors Corp.*, 976 F.2d 919 (5th Cir.1992) (plaintiff claimed that employer defamed him by suspending him and having him escorted from the employer's property); *Scott v. Machinists Automotive Trades*, 827 F.2d 589 (9th Cir.1987) (plaintiff's claim based upon statements made in counseling sessions and disciplinary proceedings); *Furillo v. Dana Corp.*, 866 F.Supp. 842 (E.D.Pa.1994) (statements claimed to be defamatory made in context of a grievance proceeding); *Morris v. Ambassador Nursing Home, Inc.*, 845 F.Supp. 1164 (E.D.Mich.1994) (CBA required any incidents of patient abuse must be reported); *Stallard v. B–Line Systems, Inc.*, 799 F.Supp. 924 (S.D.Ill.1992) (allegedly defamatory statements were integral part of dismissal process established by the CBA); *Owens v. United Parcel Serv., Inc.*, 1993 WL 546784 (D.Utah 1993) (plaintiff claimed that manner of investigation, discipline, and discharge defamed him).

Underlying the application of the *Lueck* and *Lingle* tests in these cases is the concern that allowance of the state defamation action would undermine the federal labor-contract scheme established in § 301 of the LMRA, a scheme designed to promote the collective bargaining process and uniformity in the interpretation of such agreements. As expressed by District Judge Lee in *Monsour v. Delco Remy:*

> The various tort claims by the appellants demonstrate clearly an attempt to create major state court claims out of matters which are all part of a company claim of right under a collective bargaining agreement, and the employee's right to challenge such claims through grievance procedure ending in binding arbitration. To hold otherwise in this case would subject thousands of grievance procedures involving disciplinary investigations and disciplinary actions including such matters as careless destruction of production, chronic tardiness, drinking on duty, insubordination, to lawsuits asserting state court claims. The conclusion that such claims are preempted by the [LMRA] reveals the wisdom and necessity of the established legal principle. Otherwise, the critically

important aspect of collective bargaining which is involved in the establishment of the grievance procedure to protest breaches of labor contracts would be destroyed.

851 F.Supp. 245, 248 (S.D.Miss.1994).

The Ninth Circuit and a few other courts apply the *Lueck–Lingle* tests with less skepticism in denying preemption of state defamation claims if they do not "derive from or require interpretation of [a] collective bargaining agreement." *Tellez v. Pacific Gas and Electric Co.*, 817 F.2d 536, 537–38 (9th Cir.1987).[1] Such courts focus on the *Lueck–Lingle* cautionary statement that: "Section 301 does not preempt every dispute concerning employment or tangentially involving a collective bargaining agreement; for example, state rules proscribing conduct or establishing rights and obligations independent of a labor contract are not preempted." *Tellez*, 817 F.2d at 537. In *Lueck*, the Court framed the test as whether the tort "confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 537.

In *Tellez*, in connection with the employer's investigation of drug use among its employees, security personnel developed information that one of its employees, Tellez, had bought cocaine on the job. In response, the employer, PG & E, sent Tellez a letter suspending him without pay. Pursuant to the collective bargaining agreement which prohibited discipline without just cause and established grievance procedures for resolving employer-employee disputes, Tellez's union grieved the suspension and Tellez was vindicated. Tellez then sued PG & E in state court alleging, *inter alia*, a defamation claim for the employer's distribution of the suspension letter accusing Tellez of buying cocaine. The Ninth Circuit denied § 301 preemption finding that the defamation claim neither asserted rights derived from the collective bargaining agreement nor required interpreta-

tion of the agreement's terms, and that California's defamation law establishes nonnegotiable rights and obligations independent of any labor contract. That the same factual analysis of whether or not Tellez did in fact buy cocaine was necessarily involved in both the grievance and the defamation was ignored. Also ignored was the fact that the alleged defamatory letter was the initial investigatory stage of the disciplinary action. Unquestionably, the employer was required to inform Tellez as to why he was being suspended. However, the Ninth Circuit reasoned that:

> Further, PG & E cannot plausibly maintain that Tellez's claim implicates the collective bargaining agreement. The agreement simply does not govern Bain's allegedly defamatory conduct. It neither requires management to send written notice of suspension nor provides guidelines in the event such notice is sent. Thus, Bain could not have been acting under the terms of the collective bargaining agreement when he sent the suspension letter. It follows that the resolution of Tellez's defamation claim does not require interpretation or consideration of the agreement.

> Finally, the state court action could not supplant the arbitration process. The arbitration committee was empowered to determine only whether there was just cause for Tellez's suspension; it had no authority to decide questions of intent, privilege, and injury, and no standard by which to judge the defamation claim. The committee could award only back pay, reinstatement and expunction. State courts in tort actions, by contrast, cannot in this context make determinations of just cause for suspension, but do provide the sole means for pursuing a defamation claim for damages. The courts afford paths of inquiry and remedies totally distinct from those available through the arbitration procedure. We therefore conclude that permitting Tellez's state defamation claim to proceed does not impinge on the authority of the

---

1. *See also Meier v. Hamilton Standard Elec. Sys., Inc.*, 748 F.Supp. 296 (E.D.Pa.1990); *Markus v. McDonnell Douglas Helicopter Co.*, 1990 WL 165818 (C.D.Cal.1990); *Wright v. Kellogg Co.*, 1990 WL 251004 (W.D.Mich.1990); *Adams v. Shulton, Inc.*, 747 F.Supp. 1258 (W.D.Tenn. 1990); *Jackson v. Southern California Gas Co.*, 881 F.2d 638 (9th Cir.1989).

arbitration process contemplated by the parties' collective bargaining agreement. *Tellez,* 817 F.2d at 538.[2]

■ Thus, it appears that the vast majority of case law dealing with the question of § 301 preemption of state law defamation claims holds that when statements alleged to be defamatory are made in the context of a disciplinary or grievance-arbitration procedure established by a collective bargaining agreement, § 301 preempts the state law claim of defamation. The debatable area appears to be the extent to which the connection with the collective bargaining agreement has to be explicit. The allegedly defamatory statements made by Defendants Walters and Schorr were not made in the context of a disciplinary or grievance procedure set up by the CBA. Rather, the statements are those made by Walters and Schorr to their superiors concerning their investigation into the anonymous telephone call regarding Plaintiff's activities in the wire mill foreman's locker room on October 24, 1992. The Court acknowledges that some courts have found that statements made during an investigation of employee wrongdoing were preempted by § 301. *See Mock v. T.G. & Y. Stores Co.,* 971 F.2d 522 (10th Cir.1992); *Scott v. Machinists Automotive Trades,* 827 F.2d 589 (9th Cir. 1987); *Green v. Hughes Aircraft Co.,* 630 F.Supp. 423 (S.D.Cal.1985). However, a close examination of the *Scott* opinion reveals that the panel in that case explicitly found that the allegedly defamatory statements were made "within the context of a formal grievance procedure." 827 F.2d at 594. In addition, both *Mock* and *Green* were decided prior to the Supreme Court's opinion in *Lingle* which further clarified the issue of § 301 preemption of state law tort claims. To the extent that these cases support the proposition that all statements made in the course of an investigation necessarily implicate and inextricably intertwine themselves with the CBA, the Court declines to follow their reasoning. The Court shall eschew such a formulaic approach and believes that in a case

such as the present, it is necessary to examine the elements of the particular state law tort along with the allegations of the Complaint to determine whether interpretation of the CBA is necessary to resolve the tort claim presented.

In paragraph eleven of Counts Two and Three, Plaintiff alleges that:

On or about October 23, 1992, Defendants, and each of them, falsely accused Plaintiff of having sexual intercourse on company property. Said accusations were made in the presence of Plaintiff's fellow employees of KEYSTONE, when Defendants knew, or should have known, that said statements were false when made or were made with reckless disregard for their truth or falsity and were made by them with actual malice and willful intent to injure Plaintiff in her employment and her reputation within the community.

In paragraph twelve of Counts Two and Three, Plaintiff alleges that:

The accusations made as set out above, of and concerning Plaintiff, were purely fictional and untrue. Defendants failed to properly investigate the truth of the statements and/or accusations concerning Plaintiff and failed to make any reasonable inquiry as to the truth and were grossly negligent in such failure to inquire into the truth of the facts so published concerning Plaintiff.

In paragraph seventeen of Count Three, Plaintiff alleges:

That WALTERS and SCHORR acted within the course and scope of their employment by uttering said statements in attempting to benefit their employer, KEYSTONE.

■ To state a claim for defamation under Illinois state law, a plaintiff must present facts sufficient to show that the defendants made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defen-

2. An argument can be made that the Ninth Circuit's decision is consistent with the distinction recognized in *Monsour v. Delco Remy, supra,* between defamatory statements made in the context of a disciplinary proceeding mandated by a collective bargaining agreement and those made outside of that context. *Tellez* is simply more stringent in requiring explicit authorization for the employer conduct in the collective bargaining agreement.

dants, which caused damage to the plaintiff. *Krasinski v. United Parcel Service, Inc.*, 124 Ill.2d 483, 490, 125 Ill.Dec. 310, 530 N.E.2d 468 (1988). Should the defamation claim arise within the context of an employer-employee relationship, the publication of the statement may be subject to a qualified privilege under Illinois law. *Id.* An employer has a qualified privilege to communicate or publish allegedly defamatory statements to those in the company who have a legitimate employment interest in the statements. To overcome such a qualified privilege, a plaintiff would be required to plead and prove that the statements were made with actual malice. *Id.* Since Plaintiff alleges that Defendants were acting within the course and scope of their employment by uttering the statements in an attempt to benefit their employer, Plaintiff concedes the existence of this qualified privilege. Consequently, there is no need to examine or interpret the terms of the CBA to determine Walters', Schorr's, or Keystone's right to investigate and report Plaintiff's alleged misconduct as a basis for establishing qualified privilege. This issue is conceded, and Plaintiff has pled around it by claiming that Defendants made the defamatory statements with actual malice. Under Illinois state law, "actual malice" in this context "requires the plaintiff to plead and prove that the statement was made with knowledge of its falsity or in reckless disregard of whether it was true or false." *Id.* Plaintiff in the present case has pleaded facts which if proven would constitute defamation, and has pleaded the existence of actual malice. Accordingly, the factual inquiry in this case is focused upon whether the statements made by Walters and Schorr were false and whether such statements were made with actual malice.

■ The Court cannot see how any of these two inquiries are inextricably intertwined with the terms of the CBA or would require a court to interpret the terms of the CBA. These are purely factual inquiries which do not turn on the meaning of any of the terms or provisions of the CBA. It is true that the statements claimed to be defamatory by Plaintiff are those made by Walters and Schorr concerning their investigation into the anonymous complaint regarding Plaintiff's activities in the wire mill foreman's locker room on October 24, 1992. It is also true that the CBA, by implication, authorized such an investigation in Article II, part 2.0, the company rights clause. *In re Amoco Petroleum Additives Co.*, 964 F.2d 706, 709–10 (7th Cir.1992). However, this is the qualified privilege issue already discussed, and simply because the underlying activity is allowed by the CBA or that dispute resolution under a CBA and resolution of a state tort claim would require addressing the identical set of facts does not dictate preemption of the state claim. *Lingle*, 486 U.S. at 409–410, 108 S.Ct. at 1883–1884. "As long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 preemption purposes." *Id.* at 410, 108 S.Ct. at 1883. The resolution of the state defamation claim in this case will not necessitate reference to or depend substantially upon an analysis of the terms of the CBA. At best, the defamation claim made in this case is tangentially related to the CBA. Accordingly, the Court finds that Plaintiff's claims of defamation in Counts Two and Three are independent of the CBA for § 301 preemption purposes. Plaintiff's defamation claims are, therefore, not preempted by the LMRA, and the Court lacks subject matter jurisdiction over these counts. The Court declines supplemental jurisdiction, and therefore, Counts Two and Three shall be remanded to state court for further proceedings.

IT IS THEREFORE ORDERED that the Report and Recommendation of the Magistrate Judge is **ACCEPTED**. Plaintiff's Motion to Remand [Doc. # 14] is **DENIED**. Defendants' Motions to Dismiss [Docs. # 6 and # 8] are **GRANTED** as to Count One of the Complaint and **DENIED** as to Counts Two and Three of the Complaint. Counts Two and Three of the Complaint are **REMANDED** to the Circuit Court for the Tenth Judicial Circuit, Peoria County. This case is **TERMINATED**.