(No. 65439.—)

# GERALD KRASINSKI, Appellee, v. UNITED PARCEL SERVICE, INC., et al., Appellants.

*Opinion filed October 20, 1988.*

484

Keith J. Braskich, of Peoria, and John A. McDonald, of Chicago, both of Keck, Mahin & Cate, for appellants.

Anthony C. Raccuglia & Associates, of Peru (Cynthia M. Raccuglia, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The plaintiff, Gerald Krasinski, filed suit in the circuit court of La Salle County against United Parcel Service, Inc. (UPS), and two of its employees, alleging unlawful discharge from employment and malicious defamation. The unlawful discharge count was dismissed in June 1982, and the defendants then moved for summary judgment on the defamation counts, claiming that the statements involved were privileged communications. The trial court denied the defendants' motion, finding that, though the defendants had a qualified privilege in making the statements, an issue of material fact existed as to whether the statements were made with actual malice. The defendants then successfully moved to dismiss the complaint on the ground that the claim was preempted by Federal law. The appellate court reversed (155 Ill. App. 3d 831), holding that the tort of malicious defamation is an independent State court cause of action not preempted by Federal law. We granted the defendants leave to appeal. 107 Ill. 2d R. 315.

As this appeal is before the court on the defendants' motion to dismiss, all well-pleaded facts in the complaint

will be regarded as true and all reasonable inferences from them will be considered as correct. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 514, *cert. denied* (1988), 485 U.S. 905, 99 L. Ed. 2d 236, 108 S. Ct. 1077; *Katz v. Belmont National Bank* (1986), 112 Ill. 2d 64, 67.) The complaint is in four counts. The first alleges that while the plaintiff was employed as a package driver for UPS, the company, through its agents and employees, maliciously defamed him. The allegations of the complaint are that on October 7, 1981, Frank Wise, a loss-prevention supervisor for UPS, and Bill Fields, a loss-prevention manager for UPS, waited for the plaintiff to return to the UPS office from his route. Wise, in the presence of Fields and another UPS employee, said to the plaintiff:

"I have a signed statement from Gale Koehler that you sold him the saw and that you knew it was hot."

Wise's statement, the complaint sets out, was false and the intention was to charge that the plaintiff had stolen a chain saw from a company shipment. It alleges that Wise made the statement, although he knew he did not have a signed statement from Koehler to the effect that the plaintiff sold him the saw and that the plaintiff knew it was "hot." On the same day, the complaint alleges, Wise, in the presence of the plaintiff's supervisor and Fields, said:

"We're going to have to terminate him [the plaintiff] ***, because this is a UPS shipment and Jerry stole the saw."

Fields, on the same date, in the presence of the plaintiff's supervisor and Wise, it was claimed, stated:

"He [the plaintiff] will have to be terminated for dishonesty."

All the above statements, it is charged, were made with knowledge that they were false and with reckless disregard of the truth. The plaintiff alleges the state-

ments were made with the intent to destroy his good name and reputation in his employment and "to accuse the plaintiff of a crime to cause him to lose his employment." The statements were made allegedly because UPS and its employees "could not substantiate an earlier wrongdoing that the defendant, through its agents and employees, believed that [Krasinski] had committed and knowing that the plaintiff was an active spokesman of employee rights within the company."

Count I is directed against UPS, count III is against Wise, and count IV is against Fields, and each is based on the above statements. Count II, also directed against UPS, alleges that another defamatory statement was made through its agent and employee, James Dobbins, UPS' division manager, on October 9, 1981, when he sent a notice of termination from UPS employment to the plaintiff, and copies to the plaintiff's union and to other UPS employees. The letter to Krasinski states that he was being terminated because "after completing an investigation on October 7, 1981, it was determined that you were involved in a dishonest act," in violation of the labor agreement between UPS and the plaintiff's union. Dobbins' statement, the plaintiff alleges, was intended to charge him with stealing a chain saw from a company shipment and was made with reckless disregard of the truth.

The defendants' motion to dismiss contends the plaintiff's claims are preempted by Federal law. The motion set out that the plaintiff's employment was covered by a collective-bargaining agreement between UPS and Teamsters Union Local 710 which prohibited discharge other than for "just cause." The agreement provides that "dishonesty" by an employee is "just cause" for discharge and requires that UPS give written notice to any unionized employee who is discharged. The defendants attached, as an exhibit, an arbitrator's decision on Kra-

sinski's discharge grievance. The arbitrator found in favor of Krasinski and ordered his reinstatement. The trial court dismissed the complaint with prejudice, ruling the claim was preempted by Federal law.

As stated, the appellate court reversed, holding that the plaintiff's complaint claiming defamation with actual malice was neither preempted by the primary jurisdiction of the National Labor Relations Board (NLRB) nor preempted by Federal common law under section 301 of the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. §185(a) (1982)). It held, relying on *Allis-Chalmers Corp. v. Lueck* (1985), 471 U.S. 202, 85 L. Ed. 2d 206, 105 S. Ct. 1904, and *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, *cert. denied* (1987), 483 U.S. 1032, 97 L. Ed. 2d 779, 107 S. Ct. 3248, that a cause of action for malicious defamation exists independently of the collective-bargaining agreement and, thus, was not preempted under section 301.

Section 301 of the LMRA provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce *** may be brought in any district court of the United States having jurisdiction of the parties ***." 29 U.S.C. §185(a) (1982).

The appellate court correctly held that the plaintiff's action is not preempted by section 301 of the LMRA. *Allis-Chalmers*, upon which the appellate court relied principally, held that certain State court tort causes of action are preempted by section 301. The basis for Federal preemption under section 301, the Court determined, is the congressional policy favoring uniformity and predictability in interpreting collective-bargaining agreements under a uniform body of Federal law. (*Textile Workers Union of America v. Lincoln Mills* (1957), 353 U.S. 448, 1 L. Ed. 2d 972, 77 S. Ct. 912.) This policy, it was held, requires the preemptive force of section 301 to extend

beyond suits for breach of labor contracts and include certain suits claiming liability in tort.

The analysis to determine whether there has been preemption, the Court stated, must focus on "whether the [State tort claim] confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." (*Allis-Chalmers*, 471 U.S. at 213, 85 L. Ed. 2d at 216, 105 S. Ct. at 1912.) The Court concluded that the plaintiff's claim in *Allis-Chalmers* for bad-faith delay in the handling of a disability plan was preempted, as its resolution was substantially dependent upon interpretation of the collective-bargaining agreement between the employer and union, which had incorporated the disability plan.

This court followed the *Allis-Chalmers* analysis in deciding *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1. The court held in *Gonzalez* that a State-law claim for retaliatory discharge fell outside the preemptive border of section 301. Resolution of the retaliatory discharge claim was held to be independent of the collective-bargaining agreement, as the "claim is based on a duty and right firmly rooted and fixed in an important and clearly defined public policy, [and] evaluation of the tort claim does not in any way depend upon an interpretation of the 'just cause' provision in a labor contract." 115 Ill. 2d at 10.

This court's conclusion in *Gonzalez* was recently approved by the Supreme Court in *Lingle v. Norge Division of Magic Chef, Inc.* (1988), 486 U.S. ___, 100 L. Ed. 2d 410, 108 S. Ct. 1877. The Court held that the resolution of a retaliatory discharge claim based on our State law is " 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for §301 pre-emption purposes: resolution of the state-law

claim does not require construing the collective-bargaining agreement." (486 U.S. at ___, 100 L. Ed. 2d at 420, 108 S. Ct. at 1882.) Shortly after *Lingle* was decided, the Court also vacated the judgment of the supreme court of Alabama in a decision that considered allegations remarkably similar to those raised here. (*Mays v. Reynolds Metals Co.* (1988), ___ U.S. ___, 100 L. Ed. 2d 915, 108 S. Ct. 2814.) The Court vacated the Alabama court's judgment that held that a State-law defamation claim, which arose out of an employer's investigation of an employee's alleged wrongdoing, was preempted by section 301. The Court remanded the case to the supreme court of Alabama for further consideration in light of *Lingle*. *Mays v. Reynolds Metals Co.* (1988), ___ U.S. ___, 100 L. Ed. 2d 915, 108 S. Ct. 2814.

In light of *Lingle*, we consider that the plaintiff's complaint for defamation is independent of the collective-bargaining agreement and, thus, is beyond the preemptive force of section 301. The complaint makes no reference to the collective-bargaining agreement and asserts no right under the agreement. The plaintiff's allegations are that his employer and its agents, in violation of State law, defamed him in a malicious manner. To make out a claim for defamation, the plaintiff must set out sufficient facts to show that the defendants made a false statement concerning him, that there was an unprivileged publication to a third party with fault by the defendant, which caused damage to the plaintiff. (See, *e.g.*, Restatement (Second) of Torts §558 (1977).) If the defamation claim arises out of an employer-employee relationship, the plaintiff may be confronted with a qualified privilege. To overcome the privilege, the plaintiff has to plead and prove that the statements were made with actual malice. (See, *e.g.*, W. Prosser, Torts §115, at 794 (4th ed. 1971); *Colson v. Stieg* (1982), 89 Ill. 2d 205,

214; *Zeinfeld v. Hayes Freight Lines, Inc.* (1968), 41 Ill. 2d 345, 349.) "Actual malice" in this context requires the plaintiff to plead and prove that the statement was made with knowledge of its falsity or in reckless disregard of whether it was true or false. (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 279-80, 11 L. Ed. 2d 686, 706, 84 S. Ct. 710, 726; *Colson v. Steig* (1982), 89 Ill. 2d 205, 214.) The trial court here had previously judged, in deciding the defendants' motion for summary judgment, that a genuine issue of material fact existed as to whether the statements were made with actual malice.

The primary factual considerations arising out of this particular complaint, then, are whether the statements were false and whether they were made with actual malice. Whether a statement is true or false, obviously, requires no resort to the terms of a collectively bargained labor contract. Likewise, the determination of whether there was actual malice pertains to the conduct and motivation of the defendants in making the statements, and the determination is not dependent on the terms of a labor agreement. The defendants argue that the terms of the labor agreement need to be interpreted to resolve the actual-malice question. They say the labor agreement needs to be interpreted to determine if the statements were motivated by malice, as the plaintiff asserts, or by an effort to comply with UPS' obligations under the labor contract to investigate an employee's alleged wrongdoing, as the defendant contends. That a court's analysis may involve attention to the same factual considerations as the contractual determinations, the Supreme Court said in *Lingle*, does not transform the State action into one "dependent" on the collective-bargaining agreement. (*Lingle*, 486 U.S. at ___, 100 L. Ed. 2d at 420, 108 S. Ct. at 1883; see also *Caterpillar, Inc. v. Williams* (1987), 482 U.S. 386, 398-99, 96 L. Ed. 2d 318, 331, 107

S. Ct. 2425, 2433 ("[A] *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." (Emphasis in original.)).) What was stated in *Lingle* is equally applicable here: "Neither of the [factual] elements requires a court to interpret any term of a collective-bargaining agreement." *Lingle,* 486 U.S. at ____, 100 L. Ed. 2d at 419, 108 S. Ct. at 1882.

Though UPS may have been required, under the terms of the labor agreement, to send notice to the defendant of his termination, the employee does not lose his right to file a defamation claim based on false statements made with malice during the investigation that led to his discharge from employment. The right to be free from malicious defamation—here the accusation of criminal conduct—does not arise out of the rights negotiated in the labor contract, but out of State law. The tort of malicious defamation is the type of State law that "proscribe[s] conduct, or establish[es] rights and obligations, independent of a labor contract" and is excepted from Federal preemption by *Allis-Chalmers.* We consider that the tort of defamation, requiring actual malice allegations and proof, neither is founded directly on rights created by the collective-bargaining agreement nor is its resolution dependent upon an analysis of the contract. (*Caterpillar, Inc. v. Williams* (1987), 482 U.S. 386, 394, 96 L. Ed. 2d 318, 328, 107 S. Ct. 2425, 2430.) Thus, this action is "independent" of the collective-bargaining agreement in the sense of being "independent" for section 301 purposes. *Lingle,* 486 U.S. at ____, 100 L. Ed. 2d at 420, 108 S. Ct. at 1883.

The defendants' second preemption argument is that the plaintiff's claims essentially arise out of alleged unfair labor practices and, as such, are preempted by the

exclusive jurisdiction of the NLRB, the second type of Federal preemption that has developed in the labor law area. This type of preemption, based on the holding in *San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773, "involves protecting the primary jurisdiction of the NLRB, and requires a balancing of state and federal interests" in order to protect the NLRB's jurisdiction over unfair labor practice charges. (*Allis-Chalmers*, 471 U.S. at 213 n.9, 85 L. Ed. 2d at 217 n.9, 105 S. Ct. at 1912 n.9.) The defendants say that the motives the plaintiff alleges they had for making the challenged statements—to cause the plaintiff's discharge because he was "an active spokesman of employee rights within the company"—are considered unlawful practices under the LMRA. As such, the defendants say, the claim alleges an unfair labor practice and is preempted because of the NLRB's primary jurisdiction. The appellate court rejected this contention based on the holdings in *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, and *Linn v. United Plant Guard Workers of America* (1966), 383 U.S. 53, 15 L. Ed. 2d 582, 86 S. Ct. 657.

That this claim could arguably be characterized as an unfair labor practice does not require preemption in order to protect the exclusive jurisdiction of the NLRB. In *Linn*, the Court stated clearly, "The malicious publication of libelous statements does not in and of itself constitute an unfair labor practice." (*Linn*, 383 U.S. at 63, 15 L. Ed. 2d at 590, 86 S. Ct. at 663.) *Linn* followed the preemption standards of *Garmon* that, if the activity in question were arguably protected or prohibited by the LMRA, then State court action would ordinarily be preempted. Preemption does not apply, however, if the activity in question "touch[es] interests so deeply rooted in local feeling and responsibility" or is a "peripheral concern" to the policies underlying the LMRA. (*Garmon*,

359 U.S. at 243-44, 3 L. Ed. 2d at 782, 79 S. Ct. at 779.) *Linn* held that an action for a libel it was claimed. had occurred in the course of a union organizing campaign was not preempted under the *Garmon* standards as an " 'overriding state interest' in protecting its residents from malicious libels should be recognized in these circumstances." (*Linn*, 383 U.S. at 61, 15 L. Ed. 2d at 589, 86 S. Ct. at 662.) The Court also adopted the actual-malice standards of *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 11 L. Ed. 2d 686, 84 S. Ct. 710, for libel and slander actions arising out of labor disputes.

The tort of defamation is the type of activity "deeply rooted in local feeling and responsibility" that would be viewed as a "peripheral concern" of the LMRA under the *Garmon* and *Linn* standards. Under our law, the right to be free from malicious defamation is firmly rooted in our State's public policy. The appellate court recognized that right in *Fisher v. Illinois Office Supply Co.* (1984), 130 Ill. App. 3d 996, where a unionized employee's claim for malicious defamation against an employer was held not preempted by the primary jurisdiction of the NLRB. Our appellate court held in *Fisher* that "[t]here is little doubt that the protection of an individual's interest in his reputation is a deep and traditional concern of the State of Illinois." 130 Ill. App. 3d at 1001; see also *Gertz v. Welch* (1974), 418 U.S. 323, 341, 41 L. Ed. 2d 789, 806, 94 S. Ct. 2997, 3008 (noting that "[t]he legitimate state interest underlying the law of libel is the compensation of individuals for the harm inflicted on them by defamatory falsehood. *** 'The protection of private personality, like the protection of life itself, is left primarily to the individual States under the Ninth and Tenth Amendments.' " (quoting *Rosenblatt v. Baer* (1966), 383 U.S. 75, 92, 15 L. Ed. 2d 597, 609, 86 S. Ct. 669, 679 (Stewart, J., concurring))).

Our law of defamation, which requires allegations and proof of actual malice satisfying the *New York Times* standards under the circumstances here (employee-employer relations), is consistent with the requirements of *Linn* for this claim to withstand an objection arising out of the primary jurisdiction of the NLRB. (See also *Henderson v. Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 313* (1978), 90 Wash. 2d 666, 585 P.2d 147 (*en banc*) (a State court has jurisdiction over union member's claim for defamation with actual malice against union officials); *Tosti v. Ayik* (1985), 394 Mass. 482, 476 N.E.2d 928, *cert. denied* (1987), 484 U.S. 964, 98 L. Ed. 2d 393, 108 S. Ct. 453 (a State court may grant relief on unionized employee's defamation action if defamatory statements were made with actual malice, as defined in *New York Times* and *Linn*).) The appellate court correctly judged that the complaint here was not preempted.

For the reasons stated, the judgment of the appellate court, which reversed the dismissal of the plaintiff's action, is affirmed.

*Affirmed.*

JUSTICE STAMOS took no part in the consideration or decision of this case.