DENNIS C. PARKER, Plaintiff-Appellant, v. BANK OF MARION *et al.*, Defendants-Appellees.

Fifth District   No. 5—97—0104

Opinion filed June 16, 1998.

WELCH, P.J., concurring in part and dissenting in part.

A. Courtney Cox, of Hart & Hart, of Benton, for appellant.

Joel A. Poole and Beverly D. Garner, both of Polsinelli, White, Vardeman & Shalton, P.C., of St. Louis, Missouri, for appellees.

JUSTICE MAAG delivered the opinion of the court:
The plaintiff, Dennis C. Parker, brought an action alleging defa-

mation and infliction of emotional distress against defendants, Bank of Marion (the Bank) and the president of the bank, Fred Becker. The trial court directed a verdict in favor of the Bank and Becker at the close of Parker's case in chief. Parker now appeals.

The facts are as follows. Becker hired Parker as an officer of the Bank on January 10, 1994. On February 9, 1994, Becker fired Parker. There were two vice presidents of the Bank present at this termination meeting. Becker told Parker that several women had alleged that Parker had "touched" them in the work environment. Parker asked for specific facts. Parker then proceeded to volunteer information about an incident that had occurred earlier. This earlier incident involved touching a female bank employee. Neither Becker nor the vice presidents had heard about the particular incident that Parker described.

Becker then asked Parker about an incident that had allegedly transpired the night before. Parker claimed that nothing happened the night before. Parker requested more information about the allegations so that he could defend himself. This request was refused. Parker was then asked to resign. The reason given for the resignation request was that Parker could not effectively work with the staff. Parker refused. Becker then told Parker he was terminated.

Shortly after firing Parker, Becker called an assistant cashier and two loan officers into his office and told them he had fired Parker for "touching women." Later that day, Becker called in eight female employees, as a group, none of whom were officers of the bank, and told them he had fired Parker and why. Soon after firing Parker, Becker went to the bank's remote facility and met with the vice president, a loan secretary, and a customer service representative. He told these three people that Parker had been fired for touching women.

On March 8, 1994, Becker met with the board of directors of the bank. Becker told the board that Parker had been fired for conducting himself improperly with some of the ladies at the bank.

Parker claims that he sought other jobs in banking after he was fired but to no avail. He claims he felt ashamed, dirty, hurt, and confused after being fired. This caused him to seek the advice of a mental health professional. Parker claims he can no longer interact with close friends and that he is withdrawn.

Based on the above facts, Parker filed a two-count complaint. The first count alleged defamation. Count I charged that Becker, as an agent of the Bank, falsely accused him of sexually harassing female employees by touching them and that these words were false and defamatory *per se*. Count II alleged that the Bank, through its agent

Becker, intentionally or recklessly inflicted severe emotional distress upon Parker by its extreme and outrageous conduct in publishing the accusations knowing that to do so would result in Parker suffering severe emotional distress.

At the close of plaintiff's case, the Bank and Becker moved for a directed verdict as to both counts. Both motions were granted. Parker now appeals the trial court's ruling.

The issues presented for review are:

1. Whether the trial court erred in directing a verdict on count I (defamation) against Parker on the basis of an erroneous finding that, as a matter of law, the phrase "fired for touching women" can be innocently construed.

2. Whether the trial court erred in directing a verdict on count II (infliction of emotional distress) against Parker on the basis of an erroneous finding that no verdict by the jury that the conduct of Becker and the Bank was extreme and outrageous could ever stand.

Parker contends that the trial court erred in directing a verdict on the defamation claim because the phrase "fired for touching women" cannot be innocently construed.

■ Becker and the Bank are accused of publishing defamatory statements about Parker. Liability for defamation exists where there is: a false and defamatory statement concerning another, an unprivileged publication of that statement to a third party, fault amounting at least to negligence on the part of the publisher, and either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Restatement (Second) of Torts § 558 (1977); *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490, 530 N.E.2d 468, 471 (1988). However, one who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true. Restatement (Second) of Torts § 581A (1977); *Sivulich v. Howard Publications, Inc.*, 126 Ill. App. 3d 129, 131, 466 N.E.2d 1218, 1220 (1984).

■ In the case at bar, the statement "fired for touching women" was true. Parker admitted that he had touched certain women employees, although he denied doing so in a sexual manner. Parker never produced any evidence that Becker said he was fired for "sexually harassing" female employees. He did produce evidence that tended to show that Becker's statement was interpreted by others to mean that Parker was fired for sexual harassment. This interpretation, while understandable, cannot be the basis of liability. The words spoken were true. See *Harte v. Chicago Council of Lawyers*, 220 Ill. App. 3d 255, 260, 581 N.E.2d 275, 277 (1991) (statements are action-

able *per quod* and not *per se* if they necessitate innuendo to explain their defamatory meaning and require evidence demonstrating that substantial injury resulted to plaintiff from their use).

Since an essential element of the defamation claim is missing, *i.e.*, the false statement, the trial court was correct in directing a verdict on count I.

Parker further contends that the trial court erred in directing a verdict against him on his claim of infliction of emotional distress. We agree.

■ The three elements necessary for a cause of action for reckless infliction of emotional distress are: the defendant's conduct was extreme and outrageous, the defendant knew that there was a high probability that his conduct would cause severe emotional distress, and the conduct in fact caused severe emotional distress. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 20, 607 N.E.2d 201, 211 (1992), citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806 (1988). "[T]he nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency[ ] and to be regarded as intolerable in a civilized community." *Kolegas*, 154 Ill. 2d at 21, 607 N.E.2d at 211.

■ The extreme and outrageous nature of the conduct may arise not so much from what is done as from an abuse by the defendant of some relation or position which gives him power to damage the plaintiff's interests. *W. Prosser*, Torts § 12, at 56 (4th ed. 1971); see *Kolegas*, 154 Ill. 2d at 21, 607 N.E.2d at 211.

■ At trial it was shown that Becker was aware that Parker valued his reputation highly. Despite Becker's knowledge of Parker's strong feelings about having and maintaining a good reputation within the community, Becker told numerous bank employees of Parker's discharge and the reason for the discharge. While Bank officers and management may have a legitimate reason to know why Parker was discharged, it is questionable whether there is a legitimate purpose for informing nonmanagerial employees of the circumstances of the discharge. For nearly a century, Illinois has recognized that if a defendant has knowledge that the plaintiff is especially sensitive, susceptible, or vulnerable to mental distress as a result of certain words or conduct, a cause of action will lie for unreasonably causing the distress. See *Braun v. Craven*, 175 Ill. 401, 51 N.E. 657 (1898); see also W. Prosser, Torts § 12, at 58 (4th ed. 1971).

All parties conceded that Parker was an at-will employee. As an at-will employee, Parker could have been discharged for any reason or no reason at all, with only limited exceptions. See *Kelsay v. Motorola, Inc.*, 51 Ill. App. 3d 1016, 366 N.E.2d 1141 (1977), *rev'd on*

*other grounds*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). This does not mean that an employer is free to publicize unnecessarily the circumstances of the discharge. This is particularly true when the reason is susceptible to misinterpretation and the employee is known to be especially sensitive about his reputation.

For the foregoing reasons, the court erred in granting a directed verdict as to count II. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 514 (1967).

We therefore affirm the court's order directing a verdict against the plaintiff on count I, the defamation count, and we reverse the court's order directing a verdict against the plaintiff on count II, the emotional distress count. The cause pleaded in count II is remanded for further proceedings consistent with this opinion.

For the foregoing reasons, the ruling of the circuit court is affirmed in part and reversed in part, and the cause is remanded.

Affirmed in part and reversed in part; cause remanded.

KUEHN, J., concurs.

PRESIDING JUSTICE WELCH, concurring in part and dissenting in part:

Although I concur with the majority's result regarding count I, I must respectfully dissent to the result reached regarding count II.

Our supreme court has defined conduct considered "extreme and outrageous":

> "Conduct is of an extreme and outrageous character where 'recitation of the facts to an average member of the community would arouse his resentment against the actor[ ] and lead him to exclaim, "Outrageous!" ' [Citation.] Such conduct must be differentiated from the 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities' that are part of the costs of complex society from which the law provides no protection. [Citation.] Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case." *Doe v. Calumet City*, 161 Ill. 2d 374, 392 (1994).

Our supreme court also previously noted that defendant's conduct must be so extreme as to go beyond all possible bounds of decency and must be regarded as intolerable in a civilized community. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 21 (1992). Based upon the facts in this case, I do not believe that the conduct in the instant action rises to the level of extreme and outrageous conduct.

Although I do not condone defendant's actions, I do not believe

that the conduct is so outrageous in character and so extreme in degree as to go beyond all bounds of human decency. See *Miller v. Equitable Life Assurance Society of the United States*, 181 Ill. App. 3d 954, 957 (1989). The reason for Parker's termination, "for touching women," an act admitted to by Parker, was only told to the employees of the bank, its officers, and management. It was not told to customers or publicized in the local newspaper. Although it may not have been necessary to disclose the reason for Parker's termination, I do not believe that Becker's conduct rises to the level of extreme and outrageous.

The decision as to where to draw the line for allowing intentional infliction of emotional distress actions "is based in large part on common sense and intuition more 'subtle than any articulate major premise.'" *Miller*, 181 Ill. App. 3d at 957, quoting *Lochner v. New York*, 198 U.S. 45, 76, 49 L. Ed. 937, 949, 25 S. Ct. 539, 547 (1905) (Holmes, J., dissenting). Upon reviewing the record, I do not believe that Becker's conduct was extreme and outrageous. Accordingly, I respectfully dissent.