2023 IL App (1st) 1220950

No. 1-22-0950

Opinion filed June 12, 2023.

First Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| ELIZABETH M. ANDREWS and WORLDOLUXE, LLC, an Illinois Limited Liability Company, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 21 L 11159 |
| AT WORLD PROPERTIES, LLC, an Illinois Limited Liability Company; THADDEUS J.R. WONG; and MICHAEL P. GOLDEN, | ) ) ) ) | The Honorable Thomas More Donnelly, |
| Defendants-Appellees. | ) ) | Judge Presiding. |

_____

PRESIDING JUSTICE LAVIN delivered the judgment of the court, with opinion.
Justices Pucinski and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    In 2021, plaintiffs Elizabeth M. Andrews and her company, WorldOLuxe, LLC, filed a

complaint against defendants At World Properties, LLC (d/b/a @properties), a real estate

company, and its chief executive officers, Thaddeus J.R. Wong and Michael P. Golden, alleging

defamation and intentional interference with a business expectancy. The suit was filed after

defendants publicly announced Andrews' termination from @properties as a real estate agent in

response to her social media postings regarding the January 6, 2021, Capitol riot in Washington, D.C. Pursuant to the defendants' motion (see 735 ILCS 5/2-619.1 (West 2020)), the trial court dismissed the complaint, and plaintiffs now appeal. Plaintiffs argue as they did below that defendants' publication was false, it was not substantially true, and it was not subject to an innocent construction. We affirm.

¶ 2                                      BACKGROUND

¶ 3      The following factual recitation has been gleaned from the pleadings. On January 6, 2021, Andrews, an independent contractor real estate broker associated with @properties, attended former President Donald Trump's "Save America" rally in Washington, D.C. Following Trump's live speech, Andrews proceeded to the Capitol, where Vice President Mike Pence and Congress were certifying the 2020 presidential election results. Andrews, along with a crowd, was present on the east side of the Capitol building from 1:30 p.m. to about 3:15 p.m. Andrews posted several photographs to her Facebook account, which identified her as an @properties real estate broker and linked to her @properties website. One photograph (Photo 1) features Andrews smiling happily, clad in a Trump stocking cap, and facing the camera some feet from the Capitol building. See *infra* ¶ 39. She holds both hands in the air, donning bunny ears as the crowd behind her throngs at the open doors of the building, pressing towards it. Some appear to be entering the building through the door. In a split screen (Photo 2), she posted this image, alongside another photograph of protesters with flags on a fenced veranda overlooking a bigger crowd below with the caption, "History! It's not done yet!"[1] *Infra* ¶ 39. Last, around 3:15 p.m., Andrews posted a photograph (Photo 3) from a hotel patio bar depicting a glass of champagne, a patio with tables,

_____

[1]Per the pleadings, @properties reviewed reposts of Andrews' Photo 2. We describe Photos 1 and 2 separately for the sake of clarity.

and unidentified buildings in the background with the caption, "After storming the *capital* a good glass of champagne is needed!" (Emphasis added.) *Infra* ¶ 39.

¶ 4    The next day, on January 7, @properties received and/or was mentioned in a number of negative communications regarding Andrews' postings. For example, in a Facebook posting directed to @properties and reposting Andrews' social media account along with the aforementioned splitscreen Photo 2, one individual commented, "Well, I, for one, will never use the services of a real estate company that employs a person that wants to violently storm the Capital." In another Facebook posting, also directed to @properties, a separate individual again reposted Andrews' social media account along with Photo 2, then stated "Dont [*sic*] give these folks your business!" after noting that Andrews had participated in "the domestic terrorist insurgencyand [*sic*] posted photos of herself at it." In response to this adverse publicity, @properties sent a message via e-mail, Facebook, and Twitter, stating:

> "Over the past several hours, @properties has received a tremendous amount of outreach regarding the actions of one of our agents, Libby Andrews, yesterday in Washington, DC. [*sic*] Effective immediately, @properties is terminating this agent, who acknowledged on social media, that she took part in 'storming the *Capitol*.' @properties does not condone violence, destruction or illegal activities."[2] (Emphasis added.)

Plaintiffs alleged this message, which was entitled "@properties' official statement on former agent, Libby Andrews," was sent to clients, business associates, and agents of @properties, as well as the general public.

---

[2]Plaintiffs attached this statement, which was contained in a Tweet on Twitter, to their complaint. In their response to the motion to dismiss, plaintiffs attached the same statement, sent via e-mail, but it is signed "Mike & Thad" and is instead entitled, "Agent Termination."

¶ 5     Plaintiffs then filed the present complaint alleging six counts of defamation, insofar as the statement inferred that Andrews had engaged in violence, property destruction, and criminal activity, and also that she lacked the character to perform her professional duties. They asserted @properties' statement harmed Andrews' reputation. Andrews and her company also alleged two counts of intentional interference with a business expectancy against @properties. As to defamation, plaintiffs alleged that Andrews did not engage in any illegal, violent, or criminal behavior, and therefore, @properties' message was false.

¶ 6     Instead, plaintiffs maintained Andrews exercised her right to free speech and association by attending the rally. In the complaint, Andrews acknowledged walking to the hotel patio bar after the presidential speech and posting Photo 3, taken from that bar, on social media. Indeed, an enlarged Photo 3 is attached to the complaint, along with the Tweet containing @properties' January 7 statement. Plaintiffs nonetheless alleged Andrews' statement—"After storming the *capital* a good glass of champagne is needed!"—was "innocuous" and simply reflected her "having rushed that day to the nation's *capital*" (emphasis in original) and her "participation, along with over a hundred thousand other Americans [*sic*] citizens, in the dynamic convergence upon the nation's capital, Washington, D.C., to attend a live Presidential Address." They maintained that @properties' use of the word "Capitol" thus materially altered Andrews' statement to convey that she was a lawless rioter, committing "violent, illegal criminal activity" at the Capitol building. Last, plaintiffs alleged that when Andrews posted Photo 3, she was unaware "certain individuals had engaged in unlawful activities" in Washington, D.C. on January 6.

¶ 7     Defendants filed a section 2-619.1 motion to dismiss arguing *inter alia* that @properties' statement was substantially true and subject to innocent construction. Defendants relied on

various exhibits attached to their motion, including Andrews' federal court defamation complaint against NBCUniversal Media, LLC (NBC), wherein she admitted to being present on the east side of the Capitol building on January 6, 2021, from 1:30 p.m. to about 3:15 p.m. Defendants attached Photos 1 through 3, which Andrews posted, as well as an affidavit from Alexis Albertson, @properties' director of corporate branding and digital marketing. Albertson verified that she reviewed @properties' Facebook account on January 7, 2021, which contained social media posts mentioning @properties and Andrews, as an affiliated broker. Albertson averred that the attached Facebook posts from the public (which defendants called Exhibit A) were "a small subset" of many more communications to or about @properties complaining of Andrews' own Facebook posts advertising her participation in January 6. See *supra* ¶ 4.

¶ 8    Last, defendants cited a federal district court case, *United States v. Griffin*, 549 F. Supp. 3d 49 (D.C. 2021), discussing the federal statute criminalizing knowingly and unlawfully entering or remaining in a restricted area, like the Capitol building and its grounds, and knowingly engaging in disorderly or disruptive conduct that impedes or disrupts government business in that area. See 18 U.S.C. § 1752 (2018).[3] In addition, defendants attached the criminal complaint in that case, attested to by Metropolitan Police Department Detective Scott Brown. Detective Brown averred that he was on duty on January 6 and barriers were placed at the east side of the Capitol grounds to delineate the area of permissible first amendment activity from the prohibited, secure areas protecting the governmental process. Congress's joint session to certify the vote for the 2020 presidential election began around 1 p.m. with the exterior doors of the

---

[3]A violation of this statute may be charged as either a misdemeanor or felony depending on whether the offender uses or carries a dangerous weapon or the offense results in bodily injury. See 18 U.S.C. § 1752(b) (2018) (identifying the punishments); *United States v. Chrestman*, 525 F. Supp. 3d 14, 18 (D.C. 2021) (charging a felony enhancement); *Griffin*, 549 F. Supp. 3d at 52 (charging a misdemeanor).

Capitol building otherwise locked or secured. While the Capitol police attempted to maintain order, around 2 p.m., individuals in the crowd entered restricted grounds and forced entry into the Capitol building by breaking windows and assaulting police officers. The congressional session was suspended around 2:20 p.m.

¶ 9     Plaintiffs did not file a counteraffidavit or move to strike Albertson's affidavit or any of the attached exhibits from defendants' motion to dismiss. Plaintiffs, in their responsive pleadings, did not dispute that Photos 1 through 3 were taken on January 6, during Andrews' time at the Capitol between 1 p.m. and 3:15 p.m. or that Photos 1 and 2 depicted the door to the Capitol building being breached. Likewise, they did not dispute Andrews' location on the east side near the Capitol building on January 6.

¶ 10    Following briefing, the circuit court struck the oral argument hearing date and granted defendants' motion to dismiss, finding @properties' statement was not defamatory. This appeal followed.

¶ 11                              ANALYSIS

¶ 12    Section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)) allows a party to file a combined section 2-615 and section 2-619 motion to dismiss. *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 32. Here, we focus on section 2-619(a)(9) (735 ILCS 5/2-619(a)(9) (West 2020)), which we find dispositive. A motion to dismiss filed pursuant to section 2-619(a)(9) admits as true all well-pleaded facts, along with the reasonable inferences that can be gleaned from those facts, but asserts an affirmative defense or other matter that avoids or defeats the claim. *LAB Townhomes, LLC*, 2015 IL 118139, ¶ 34; *Carr v. Koch*, 2012 IL 113414, ¶ 27. The "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. *Doe v. University of*

*Chicago Medical Center*, 2015 IL App (1st) 133735, ¶ 37. If facts within an affidavit dispute the allegations of the complaint and are not contradicted by a counteraffidavit, the court must accept the facts in the affidavit as true. *Goldberg v. Brooks*, 409 Ill. App. 3d 106, 112 (2011); see also *Piser v. State Farm Mutual Automobile Insurance Co.*, 405 Ill. App. 3d 341, 352 (2010) (noting a plaintiff cannot rely on the allegations in his own complaint to refute a section 2-619 affidavit).

¶ 13 Once a defendant satisfies the initial burden of establishing an affirmative matter to defeat the plaintiff's claim, the burden then shifts to the plaintiff to demonstrate that the proffered defense is unfounded or requires the resolution of a material fact. *Doe*, 2015 IL App (1st) 133735, ¶ 37. If the plaintiff fails to carry the shifted burden of going forward, the complaint will be dismissed. *Id.* We interpret the pleadings and supporting documents in the light most favorable to the nonmoving party. *LAB Townhomes, LLC*, 2015 IL 118139, ¶ 34. We review the trial court's granting of a motion to dismiss *de novo*. *Illinois Ass'n of Realtors v. Stermer*, 2014 IL App (4th) 130079, ¶ 16.

¶ 14 On appeal, plaintiffs challenge the circuit court's dismissal contending that defendants' publication was defamatory *per se*, meaning the injury was obvious and apparent on its face. See *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 43. To prove defamation *per se*, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and the publication caused damages. *Seitz-Partridge v. Loyola University of Chicago*, 2013 IL App (1st) 113409, ¶ 21. A defamatory statement is one that harms a person's reputation to the extent that it lowers the person in the eyes of the community or deters others from associating with that person. *Moore v. People for the Ethical Treatment of Animals, Inc.*, 402 Ill. App. 3d 62, 68 (2010).

¶ 15 There are five categories of such statements, only several of which are relevant in this case. Those include words that impute the commission of a criminal offense, words that impute a person lacks the integrity to perform her employment duties, and words that impute a person lacks ability or otherwise prejudice the person in her profession. *Green v. Rogers*, 234 Ill. 2d 478, 491-92 (2009). Under the first category, generally the crime must be an indictable one involving moral turpitude, with death or imprisonment as punishment. *Dobias v. Oak Park & River Forest High School District 200*, 2016 IL App (1st) 152205, ¶ 87. If a defamatory statement is actionable *per se*, the plaintiff need not plead or prove actual damage to her reputation to recover. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 87 (1996). Rather, those statements that fall in the actionable *per se* categories are considered so obviously and materially harmful to the plaintiff that injury to her reputation is presumed. *Id.* As a result, a defamation *per se* claim must be pled with a heightened level of precision and particularity. *Green*, 234 Ill. 2d at 495.

¶ 16 However, even if a statement falls into one of the five categories of defamation *per se*, it will not be actionable if it is reasonably capable of an innocent construction. *Hadley v. Doe*, 2014 IL App (2d) 130489, ¶ 21. This occurs if the words and their implications, when considered in context and given their natural, obvious meaning, are reasonably capable of an innocent interpretation or construction. *Tuite v. Corbitt*, 224 Ill. 2d 490, 502 (2006); *Bryson*, 174 Ill. 2d at 90. Whether a statement is susceptible to such interpretation is a question of law for the court to decide. *Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 58. Similarly, truth is an absolute defense to defamation, and only the "substantial truth" is required for this defense. *Seitz-Partridge*, 2013 IL App (1st) 113409, ¶ 21; see also *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987) (noting it is not necessary to establish the literal truth of the

statement). Such demonstration is made where the defendant shows that the "gist" or "sting" of the allegedly defamatory material is true. *Harrison v. Chicago Sun-Times, Inc.*, 341 Ill. App. 3d 555, 563 (2003). The "gist" or "sting" of the alleged defamation means the heart of the matter in question—the hurtfulness of the utterance. *Vachet*, 816 F.2d at 316. Additionally, where no reasonable jury could find that substantial truth had not been established, the question is one of law, and the matter may be raised in a motion to dismiss. *Seitz-Partridge*, 2013 IL App (1st) 113409, ¶ 21; *Lemons v. Chronicle Publishing Co.*, 253 Ill. App. 3d 888, 890 (1993).

¶ 17     While plaintiffs maintain the statement at issue by @properties was false, not substantially true, and not subject to an innocent construction, for the reasons to follow, we disagree. Here, @properties initially wrote, "Over the past several hours, @properties has received a tremendous amount of outreach regarding the actions of one of our agents, Libby Andrews, yesterday in Washington, D.C." In their motion to dismiss, defendants provided the affidavit by Albertson, director of their social media, averring that she had received numerous communications to or about @properties complaining of Andrews' own Facebook posts, which advertised her presence and activity at the Capitol on January 6. Albertson then attached exhibits of Facebook posts from the public referencing Andrews' social media account and postings (including Photo 2). Defendants thus established the statement by @properties was true—they received a high volume of communications regarding Andrews' actions in Washington, D.C. See *Seitz-Partridge*, 2013 IL App (1st) 113409, ¶¶ 21, 25-26.

¶ 18     The company @properties next wrote, "Effective immediately, @properties is terminating this agent, *who acknowledged on social media, that she took part in 'storming the Capitol.'* " (Emphasis added.) Plaintiffs do not dispute that Andrews was terminated from @properties as a real estate agent, so that too is true. Moreover, it was Andrews who first

9

reported around 3:15 p.m. on her Facebook page that, "After *storming the capital* a good glass of champagne is needed!" (emphases added), along with a photo depicting a glass of champagne on a patio and unidentified buildings in the background. See *infra* ¶ 39 (Photo 3). Where, as here, Andrews' own characterization is not substantially different from the allegedly defamatory language, that language may be deemed substantially true. See *Harrison*, 341 Ill. App. 3d at 563; see also *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) ("Put another way, the statement is not considered false unless it 'would have a different effect on the mind of the reader from that which the pleaded truth would have produced.' " (quoting Robert D. Sack, Libel, Slander, and Related Problems 138 (1980)); *Hnilica v. Rizza Chevrolet, Inc.*, 384 Ill. App. 3d 94, 97 (2008) ("Harmful statements are defamatory only if they are false.").

¶ 19    The evidence attached to defendants' section 2-619 motion further defeats and negates plaintiffs' conclusory allegations of falsity and support defendants' substantial truth defense. See *Economy Fire & Casualty Co. v. GAB Business Services, Inc.*, 155 Ill. App. 3d 197, 201 (1987). Plaintiffs, for example, conveniently omitted from Andrews' state defamation action a number of facts, including that Andrews was present on the east side of the Capitol building from 1:30 p.m. to 3:15 p.m. and posted Photos 1 and 2 of herself there. See *infra* ¶ 39. During that time, the crowds entered prohibited areas by the Capitol and, around 2 p.m., breached the previously secured doors of the building, leading to the disruption and suspension of official governmental proceedings. These details have been gleaned from Andrews' federal defamation complaint against NBC, supplied by defendants, and the other exhibits. See *infra* ¶ 30; *American Federation of State, County, & Municipal Employees, Council 31 v. Illinois Labor Relations Board*, *State Panel*, 2017 IL App (5th) 160046, ¶ 18 (noting a court may take judicial notice of documents in the records of other courts or administrative tribunals); *O'Callaghan v. Satherlie*,

2015 IL App (1st) 142152, ¶ 18 (noting, the court can also consider judicial admissions in the record and matters of which the court is entitled to take judicial notice); *Village of Riverwoods v. BG Ltd. Partnership*, 276 Ill. App. 3d 720, 724 (1995) (noting a court may take judicial notice of public record documents for a section 2-619 motion).

¶ 20     As set forth, Photos 1 and 2 show Andrews some feet from the Capitol building, smiling and holding two sets of bunny fingers in the air while wearing a Trump hat, as the crowd behind her throngs at the open doors of the building and presses towards it, with some appearing to enter the building. See *infra* ¶ 39. Photo 2 also shows protesters with flags on a fenced veranda overlooking a larger crowd below with the caption, "History! It's not done yet!" See *infra* ¶ 39. These photos, their captions, and the facts further demonstrate defendants' language was substantially true: Andrews "*acknowledged on social media, that she took part in 'storming the Capitol.*' " And, it was for that reason that defendants terminated Andrews.

¶ 21     Plaintiffs nonetheless argue that Andrews' statement—"After storming the *capital* a good glass of champagne is needed!" (see *infra* ¶ 39 (Photo 3))—conveyed she "was part of a heavy influx of people rushing" to the "*capital*" of Washington, D.C., on January 6 to simply attend an event. They alleged @properties' substitution of the word "Capitol," the building, when considered with the balance of defendants' statement, altered the meaning of Andrews' post to falsely convey that she had engaged in violence, destruction, or other illegal criminal acts. See *infra* ¶ 39 (Photo 3). Plaintiffs complain that latter message was the gist or sting of defendants' defamatory *per se* statement.

¶ 22     Plaintiffs' proposed inferences and arguments are unreasonable for several reasons. See *LAB Townhomes, LLC*, 2015 IL 118139, ¶ 34. Again, it was Andrews' own social media postings and words that imputed a crime or at least that she was part of the agitating crowd on

January 6 and therefore condoned its activity of impeding official government proceedings. See 18 U.S.C. § 1752 (2018) (prohibiting knowingly engaging in disorderly or disruptive conduct that impedes or disrupts government business in that area); Restatement (Second) of Torts § 583 (1977) (noting "the consent of another to the publication of defamatory matter concerning [her] is a complete defense to [her] action for defamation"). Defendants' affidavit and corresponding attachments betray the reasonable readers' view of Andrews' social media postings. Several individuals wrote: "Well, I, for one, will never use the services of a real estate company that employs a person that wants to violently storm the Capital" and "Dont [*sic*] give these folks your business!" after noting that Andrews had participated in "the domestic terrorist insurgencyand [*sic*] posted photos of herself at it." Notably, Andrews' post did not state, "After *a peaceful protest in Washington, D.C.*, a good glass of champagne is needed!" or "After *exercising one's first amendment rights in Washington, D.C.*, a good glass of champagne is needed!" Rather, she used the word "storm." Excluding any reference to weather, the word "storm" when used as a transitive or intransitive verb means "to attack by storm," as in "stormed ashore at zero hour," "to be in or to exhibit a violent passion: RAGE," such as "storming at the unusual delay," "to rush about or move impetuously, violently, or angrily," as in "the mob stormed through the streets," and "to attack, take, or win over by storm," as in "storm a fort." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/storming (last visited May 23, 2023) [https://perma.cc/NVN8-DZ8Q].

¶ 23    Simply put, storming the seat of government, whether it is the city (capital) or building and its grounds (Capitol) signifies an agitation, violent disruption, or forced taking. Andrews reported that she partook in that storm and was present at the Capitol on January 6, notwithstanding plaintiffs' contention that Andrews herself did not specifically engage in any

violent or criminal activity. The slight inaccuracy in defendants' statement (using Capitol instead of capital) therefore did not substantively alter Andrews' own statement. Indeed, the common law of libel takes but one approach to the question of falsity, insofar as it overlooks minor inaccuracies to concentrate upon substantial truth; a defendant need not "justify every word of the alleged defamatory matter; it is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details." (Internal quotation marks omitted.) *Masson*, 501 U.S. at 516-17; see also *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 42 (noting that as to substantial truth, "allegedly defamatory material is not actionable even where it is not technically accurate in every detail"). Regardless, the issue in this case is not whether Andrews actually committed destructive or criminal acts on January 6 but rather whether she acknowledged on social media participating in an event wherein such acts were committed.

¶ 24    In that sense, this case may be likened to *Vachet*, wherein the court found a newspaper stated the substantial truth as to the plaintiff Michael Vachet, even though the paper incorrectly reported he was arrested on a warrant, when no warrant had issued. The court wrote:

> "Here, the 'gist' or 'sting' of which Vachet complains is his association with a suspected rapist of an elderly woman because he was arrested for harboring a fugitive. Yet, he admits that he was arrested on the charge of harboring Saucerman, who was suspected of committing such an act. Likewise, Vachet's arrest for harboring a fugitive is the highlight of the articles as they relate to him." *Vachet*, 816 F.2d at 316.

Similarly, here, plaintiffs' essentially admitted the gist or sting of the hurtful utterance, of which they now complain. See also *Parker v. Bank of Marion*, 296 Ill. App. 3d 1035, 1038 (1998) (noting the truth barred the plaintiff's defamation action against his employer for stating he was "fired for touching women," where the plaintiff admitted to touching women, albeit not in a

sexual manner). We thus decline Andrews' invitation to innocently construe her own language and then hold the defendants' legally accountable for any negative implications that might have arisen from it.

¶ 25    As such, the final sentence in the statement at issue—"@properties does not condone violence, destruction or illegal activities"—can likewise be interpreted as substantially true.[4] This sentence conveyed that @properties did not regard as acceptable, forgivable, or harmless the representations conveyed by Andrews on her social media posts. See *Condone*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/condone (last visited May 24, 2023) [https://perma.cc/7WCF-EZDQ]. The sentence also could be considered nonactionable opinion. See *Seitz-Partridge*, 2013 IL App (1st) 113409, ¶ 29 (noting statements that are capable of being proven true or false are actionable, whereas opinions are not); *Brennan v. Kadner*, 351 Ill. App. 3d 963, 969 (2004) (noting where the writer is exploring a subjective view or an interpretation, the statement is nonactionable opinion).

¶ 26    Alternatively, the statement, when considered in context and given its natural and obvious meaning, may be innocently construed.[5] See *Tuite*, 224 Ill. 2d at 502; *Bryson*, 174 Ill. 2d at 90. " '[I]f, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se*.' " *Tuite*, 224 Ill. 2d at 503 (quoting *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982)).

---

[4]We note that the cornerstone of defamation is the issuance of a false statement. See *Seitz-Partridge*, 2013 IL App (1st) 113409, ¶ 21 ("true statements cannot support a claim of defamation"). Whether a statement imputes a criminal offense, that a person lacks integrity in her employment duties, or a person lacks ability or otherwise prejudice her in her profession are matters relevant only as to the damages that must be proven. See *Benton*, 2020 IL App (1st) 190549, ¶ 43 (distinguishing *per se* and *per quod* actions). How a statement qualifies as *per se* defamation becomes irrelevant if the substantial truth of the statement is established, as in this case.

[5]We note that whether a statement can be innocently construed may also be considered under section 2-619. *Bryson*, 174 Ill. 2d at 92.

In other words, if a statement is reasonably capable of a nondefamatory interpretation in context, *it must be so interpreted. Green*, 234 Ill. 2d at 500; *Harrison*, 341 Ill. App. 3d at 570 (same); see also *Jacobsen v. Gimbel*, 2013 IL App (2d) 120478, ¶ 30 (noting, such statements are not actionable *per se*). There is no balancing of reasonable constructions. *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 324 (1999). This tougher standard is warranted because of the presumption of damages in *per se* actions. *Id.*

¶ 27   Here, this final sentence says nothing about Andrews specifically and generally repudiates violence, destruction, and illegal activity. Thus, to the extent it refers to anyone, it could be someone other than Andrews. See *Patlovich v. Rudd*, 949 F. Supp. 585, 591 (N.D. Ill. 1996). Given the public accusations against @properties and the violence, destruction, and illegal activity that ensued on January 6, which plaintiffs do not dispute, the statement may reasonably be construed innocently in defense of @properties' reputation, rather than an attempt to defame Andrews. See *Jacobsen*, 2013 IL App (2d) 120478, ¶ 32; *Dubinsky*, 303 Ill. App. 3d at 327 (statements that do not make a direct accusation of crime against the plaintiff may be innocently construed).

¶ 28   Also, given the import of the entire statement (see *Harrison*, 341 Ill. App. 3d at 570), together with the photos, the statement may be innocently construed to convey @properties' termination of Andrews due to her social media posts and actions in *celebrating* the storming of the capital/Capitol, rather than accusing her of specifically engaging in any criminal or destructive acts herself. See, *e.g.*, *id*. at 569-71 (mother's alleged "kidnapping" of her child may be reasonably capable of an innocent construction and not the commission of a criminal act). The precedent of our supreme court requires us to interpret statements that are reasonably capable of an innocent construction as nondefamatory, instead of balancing a reasonable innocent

construction of a statement against a reasonable defamatory construction. See *Tuite*, 224 Ill. 2d at 504. For the reasons stated, plaintiffs have failed to establish an actionable claim of defamation as a matter of law.

¶ 29    In reaching this conclusion, we reject plaintiffs' argument that the third sentence in defendants' statement must first be considered under the innocent construction rule without regard to whether the remainder of the sentences are substantially true. Plaintiffs' suggestion that we do so turns on its head the requirement that we consider the statement as a whole and the words in context.

¶ 30    We also reject plaintiffs' challenge to Albertson's affidavit and its exhibits. Plaintiffs argue the exhibits of the public's Facebook postings lacked any foundation and should have been disregarded as inadmissible and therefore improper under section 2-619(a)(9).[6] However, a party cannot attack the sufficiency of an affidavit for the first time on appeal. *Stone v. McCarthy*, 206 Ill. App. 3d 893, 899-900 (1990). Plaintiffs did not move to strike the affidavit or object to it before the circuit court. Likewise, they did not file a counteraffidavit, and thus the court accepted the facts in Albertson's affidavit and referenced exhibits as true. See *Goldberg*, 409 Ill. App. 3d at 112; see also *Fayezi v. Illinois Casualty Co.*, 2016 IL App (1st) 150873, ¶ 44 (noting as to a section 2-619 motion, a plaintiff's failure to submit a counteraffidavit is "fatal to [her] cause of

---

[6]Plaintiffs argue, without adequate citation to the record or law, that the Facebook documents attached to the affidavit were inadmissible as business records and inadmissible hearsay. Plaintiffs thereby violate Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020), which requires an appellant to support her contentions with citation to legal authority and the record relied on. "A reviewing court is entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; it is not merely a repository into which parties may dump the burden of argument and research, nor is it the obligation of this court to act as an advocate." *See v. Illinois Gaming Board*, 2020 IL App (1st) 192200, ¶ 24. We reach the same conclusion regarding plaintiffs' statement in their brief: "No Defendant took the time to confirm with Andrews what exactly happened on January 6, 2021 or what her participation in any of those events were." They fail to cite any legal authority for the proposition that a defendant must investigate the factual basis underlying a plaintiff's own public representations before commenting on them. See *id.*; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

action" (internal quotation marks omitted)); *Piser*, 405 Ill. App. 3d at 352 (noting the failure to challenge or contradict supporting affidavits filed with a section 2-619 motion results in admission of the facts stated therein).

¶ 31    Plaintiffs now claim that they intended to argue the matter orally in court at the scheduled hearing on May 17, 2022. The "case summary" in the common law record, which is the only record before this court, suggests that the oral argument was canceled and stricken on May 17. There was a "continued case management." The court's own final written order, entered May 27, also demonstrates that the court struck the hearing date, which was certainly within its discretion. See *CitiMortgage Inc. v. Lewis*, 2014 IL App (1st) 131272, ¶ 42. We presume the circuit court's ruling was in conformity with the law and the facts, and an appellant bears the burden of overcoming that presumption. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 15. Plaintiffs have not done so. Plaintiffs also had ample time to challenge the affidavit prior to the court's final judgment, and they could have filed a motion to reconsider the stricken hearing date. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). As they did nothing, we cannot countenance their claims on appeal. They are forfeited. See *Helping Others Maintain Environmental Standards v. Bos*, 406 Ill. App. 3d 669, 695 (2010) (noting, generally, a party who does not raise an issue in the trial court forfeits the issue and may not raise it for the first time on appeal).

¶ 31    Forfeiture aside, Albertson's affidavit, including the attached exhibits and the photos referenced therein, was admissible. See Ill. S. Ct. 191(a) (eff. Jan. 4, 2013) (requiring that an affiant in an involuntary dismissal be able to testify competently about facts admissible in evidence). A party must lay a proper foundation for the introduction of documentary evidence, which occurs when the evidence is identified and authenticated. See *People v. Ziemba*, 2018 IL App (2d) 170048, ¶ 51; *Piser*, 405 Ill. App. 3d at 348. Authentication requires a party to present

evidence demonstrating the document is what the party claims it to be. *Ziemba*, 2018 IL App (2d) 170048, ¶ 51; *Piser*, 405 Ill. App. 3d at 348; see also *People v. Curry*, 2020 IL App (2d) 180148, ¶ 56 (same). The proponent need prove only a rational basis upon which the fact finder can conclude the documents accurately portray what they purport to show, and the proponent can meet this burden by using circumstantial evidence of authenticity such as content, substance, and surrounding circumstances. *Ziemba*, 2018 IL App (2d) 170048, ¶¶ 51-52; *People v. Vaden*, 336 Ill. App. 3d 893, 899 (2003).

¶ 32    Here, Albertson averred that the exhibits attached to her affidavit were Facebook posts from the public that appeared on @properties' Facebook account, which she copied from Facebook. In them, the public references and reposts Andrews' social media and postings. Similarly, in her affidavit, Albertson wrote that the public reposted "Facebook posts by Andrews depicting her in front of the United States Capitol on January 6, 2021," and the posts "related to her [Andrews] participation in the events of January 6, 2021, in Washington, D.C." This was sufficient to authenticate the exhibits of the public commentary, and it also established the photos were what defendants claimed them to be, images of Andrews' activities and actions on January 6. See *People v. Brand*, 2021 IL 125945, ¶ 41 (noting social media messages may constitute documentary evidence for admissibility purposes, despite the digital nature).

¶ 33    We thus reject plaintiffs' argument that Photos 1 and 2 depicting Andrews lacked a proper foundation because Albertson did not, for example, identify the time they were taken or aver they were true and accurate representations of "the scene itself." See Ill. S. Ct. 191(a) (eff. Jan. 4, 2013). Again, Andrews did not move to strike these photo exhibits or file a counteraffidavit. In her responsive pleadings, Andrews did not dispute these were her own Facebook posts on January 6, or that they depicted her standing nearby the Capitol building then,

where she was admittedly present from 1 p.m. to about 3:15 p.m. on the east side. The photos were properly referenced and plaintiffs regardless have forfeited any challenge to them by failing to raise the matter before the circuit court. See *Bos*, 406 Ill. App. 3d at 695.

¶ 34    Last, plaintiffs contend defendants refuted only factual pleadings in the complaint and did not introduce an affirmative matter to defeat their claim, as required by section 2-619(a)(9). They argue dismissal was therefore inappropriate. We disagree. Defendants presented evidence demonstrating that their statement, when viewed in light of Andrews' own representations, was substantially true and also could be innocently construed. These defenses negated the defamation claim and, at the very least, refuted crucial conclusions of law and unsupported material facts in the complaint. See *Glass Specialty Co. v. Litwiller*, 147 Ill. App. 3d 653, 655 (1986). No reasonable jury could find plaintiffs presented an actionable claim as a matter of law. See *Seitz-Partridge*, 2013 IL App (1st) 113409, ¶ 21; *Kapotas*, 2015 IL App (1st) 140534, ¶ 58. Defendants therefore fulfilled their burden of defeating plaintiffs' claim, and plaintiffs did not demonstrate the defense was unfounded or required resolution of a material fact. See *Doe*, 2015 IL App (1st) 133735, ¶ 37.

¶ 35    As plaintiffs' defamation claim fails, so too does their claim of intentional interference with business expectancy against @properties. See *Antonacci v. Seyfarth Shaw, LLP*, 2015 IL App (1st) 142372, ¶ 33. Plaintiffs also have not argued that claim, thus forfeiting it. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 36                                CONCLUSION

¶ 37    For the reasons stated, we affirm the circuit court's dismissal of plaintiffs' complaint.

¶ 38    Affirmed.

¶ 39                                                            APPENDIX

Photo 1



Photo 2



Photo 3



---

*Andrews v. At World Properties, LLC*, 2023 IL App (1st) 220950

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 21-L-11159; the Hon. Thomas More Donnelly, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael R. Pieczonka, of Pieczonka Law LLC, and Tim Biasiello, both of Park Ridge, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Aaron H. Stanton, Victoria R. Collado, Joshua J. Cauhorn, and Brittany A. Martin, of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for appellees. |

---