2026 IL App (1st) 241952-U

No. 1-24-1952

Filed June 3, 2026

Third Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 06 CR 26038 |
| LAMONT BROWN, | ) ) | Honorable Timothy J. Joyce, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Motion for leave to file a successive postconviction petition made a colorable claim of actual innocence. Purported eyewitness's book published after trial constituted "other evidence" demonstrating the petition's allegations were capable of objective corroboration. Petitioner explained why he was unable to attach an affidavit from the witness. Witness's prior inconsistent statement bears on his credibility but does not negate the conclusive character of his statements.

¶ 2        Lamont Brown appeals the circuit court's denial of his motion for leave to file a successive postconviction petition. For the following reasons, we reverse and remand for further proceedings.[1]

¶ 3                                I. BACKGROUND

¶ 4        A jury found Brown guilty of first degree murder for the September 2006 shooting death of 15-year-old Delmont Fulton. No witness directly observed Brown shoot Fulton, but three witnesses saw Brown follow Fulton into an alley before they heard a gunshot. One witness observed Brown produce a handgun before the shooting. She also discovered Fulton on the ground bleeding, just after hearing the shot. Fulton exclaimed that Brown had shot him. Following his 2008 trial, Brown was sentenced to 60 years' imprisonment.

¶ 5        Brown's conviction was affirmed on appeal. *People v. Brown*, 1-08-1037 (2011) (unpublished order entered under Illinois Supreme Court Rule 23). Subsequently, Brown filed multiple unsuccessful collateral attacks. *People v. Brown*, 2016 IL App (1st) 141195-U (affirming summary dismissal of Brown's initial 2013 postconviction petition); *People v. Brown*, No. 1-21-0686 (2022) (unpublished summary order filed under Illinois Supreme Court Rule 23(c)) (affirming denial of a 2021 petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2024)); *People v. Brown*, No. 1-23-0447 (2023) (unpublished summary order filed under Illinois Supreme Court Rule 23(c)) (affirming denial of a prior motion for leave to file a successive postconviction petition).

¶ 6        To support his section 2-1401 petition filed in 2021, which alleged police coerced witnesses to testify against him, Brown attached affidavits from certain individuals who were interviewed by police during their investigation of Fulton's murder. One such affidavit was provided by Rayvon

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

Parker in June 2007. Parker attested, "I didn't witness the shooting first hand [*sic*], all I heard was a shot." He added, "The police tried to say that Lamont Brown had threaten[ed] me before[. T]hat's not true and I don't know where they got that from. The police tried to get me to say different things, but they were not true. That's all I [saw] and know at this present time." A separate exhibit included a page excerpted from a December 8, 2006, police report, which indicated that Parker and some of his family members were interviewed by an assistant state's attorney (ASA) in September 2006, shortly before a warrant was issued for Brown's arrest.

¶ 7        Brown also attached the answer to pretrial discovery his trial counsel filed in 2007. The answer listed Dennis Minaglia, a defense investigator, as a potential witness the defense might call at trial and attached Minaglia's report. The July 2007 report stated that Minaglia spoke with the 15-year-old son of Marva Parker, who was listed on the State's answer to discovery as a potential witness. The name of her son is redacted but context indicates this was Rayvon Parker. According to Minaglia, Parker stated he was in the vicinity of Fulton's shooting but did not observe it, only having heard a gunshot.

¶ 8        Brown filed the present motion for leave to file a successive petition in 2024, claiming actual innocence. The motion and proposed successive petition assert that Rayvon Parker published a book in 2023, in which Parker recounts witnessing a different person, Shannon "Shoe" Byars, shoot and kill Fulton. Brown's brief cites a website showing Parker's book is available for purchase.

¶ 9        The proposed petition includes excerpts from the book, with page numbers cited. In Parker's account, Byars confronted Fulton about Fulton shooting someone against the directions of a gang leader, referred to as "KBF." The encounter went as follows:

"Shoe: KBF said stand down, nobody told you to kill last n*** you got down on (D.D.). You doin s*** just to be doing it. L off limits.

Delmont: On my momma grave, ain't no m*** off limits. Imma kill whoever.

Shoe: Is that right?

Delmont: I'm ready to go be with my momma anyway.

Shoe: Go be with your momma then, shorty."[2]

Following this exchange, Byars's "face contorted into a mask of Pure Evil." Parker continued:

"Those were his exact words verbatim before he (Shoe) pulled out the very same Glock 40 Delmont popped D.D. with, and shot Delmont point blank range somewhere in the chest area. The slug was so powerful it lifted Delmont off his feet and knocked him on top of a pile of trash.

I was in complete shock. Shoe put the gun in my face, daring me to reach for anything as simple as a cigarette lighter…I was watching the pile of garbage my best friend was desperately stumbling up out of and Shoe spun around and walked off. Delmont [exclaimed,] 'Ahh! He shot me!' "

The proposed petition asserted that the book was included with the petition as an exhibit, but the book was not included in the materials filed with the Clerk.

¶ 10    In addition to the book, Brown attached typewritten messages, which he attested to have received from Parker in 2023 via a prison message system. In one message, Parker states, "[I] wrote the book of truth and [I am] prepared to get on the stand and testify to get you home even [though] I can lose my life behind it." In another, he wrote, "You need to send me [your] lawyer['s]

_____

[2]Punctuation and spelling edited for clarity.

information so we can get you home." In a third message, Parker stated that he was shot five times for writing the book.

¶ 11     Brown claimed the book and Parker's messages were newly discovered evidence that proved his innocence. Brown explained that he could not obtain an affidavit from Parker because Parker was in custody in the Cook County Jail. He requested the court appoint counsel to assist him with obtaining necessary affidavits.

¶ 12     In a written ruling, the trial court denied Brown's motion for leave to file a successive petition. This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2024)) allows for the filing of "[o]nly one petition *** without leave of court." *Id*. § 122-1(f). Leave to file a successive petition may only be granted when a defendant either (1) satisfies the cause and prejudice test for claims of trial error not included in their original petition or (2) makes a colorable claim of actual innocence. *People v. Sanders*, 2016 IL 118123, ¶ 24. Should leave to file be granted, the successive petition is docketed for second-stage proceedings, where counsel may be appointed to assist. *People v. Walker*, 2022 IL App (1st) 201151, ¶ 20.

¶ 15     To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *People v. Robinson*, 2020 IL 123849, ¶ 47. Newly discovered evidence is evidence that was discovered after trial and could not have been discovered earlier through the exercise of due diligence. *Id*. Evidence is material if it is relevant and probative of the petitioner's innocence. *Id.* Noncumulative evidence adds to the information that the fact finder

heard at trial. *Id*. The conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. *Id*.

¶ 16 We review the circuit court's denial of leave to file a successive postconviction petition asserting actual innocence *de novo*. *Id*. ¶ 40. Our inquiry solely concerns the sufficiency of the petition. *Id*. ¶ 39. We make no factual or credibility determinations. *Id*. ¶ 45. All well-pleaded allegations in the petition and supporting affidavits not positively rebutted by the trial record are taken as true. *Id*. ¶ 45. Denial is appropriate only when "it is clear from a review of the petition and supporting documentation that, as a matter of law, the petition cannot set forth a colorable claim of actual innocence." *Id*. ¶ 44. But, when the petitioner's supporting documentation raises the probability that it is more likely than not that no reasonable juror would have convicted the petitioner in light of the new evidence, leave should be granted. *Id*.

¶ 17 Here, the State argues multiple deficiencies in Brown's petition preclude further proceedings: Parker's book was not included as an exhibit; Brown failed to provide an affidavit from Parker; the messages Parker purportedly sent Brown in prison lack authenticity; Brown was aware of Parker before his trial; and Parker's 2007 affidavit contradicted his later claim to have witnessed Byars shoot Fulton. Brown counters that his petition adequately set forth a claim of actual innocence, as he was unaware Parker could demonstrate his innocence until the publication of Parker's book.

¶ 18 The absence of Parker's book from the record is not fatal to Brown's petition. Brown's petition stated that the book was included as Exhibit A. He verified his petition as required by the Act and separately verified that the exhibits were accurate. See 725 ILCS 5/122-1(b) (West 2024) (requiring that a postconviction petition be verified by affidavit). A pleading verification "confirms that the allegations are brought truthfully and in good faith." *People v. Collins*, 202 Ill. 2d 59, 67

(2002). Based on his verification, we presume Brown included the book but, for an unknown reason, it failed to be included in the materials filed with the Clerk. This may be cured at the second stage by filing the book with an amended petition.

¶ 19    The purpose of attaching "affidavits, records, or other evidence" is to show a petition's allegations are "capable of objective or independent corroboration." *Id*. Brown's lengthy reproduction of certain passages with page number citations, Parker's message referring to the book as exonerating, and the appearance of the book online[3] are indicative of the book's existence and support that its content is as Brown claims. Thus, despite the book's absence from the record, Brown's petition and supporting exhibits are sufficient at the pleading stage to show his allegations are capable of objective or independent corroboration.

¶ 20    For the same reason, we do not believe the lack of an affidavit from Parker precludes granting Brown leave to file. "The only requirement is that the supporting evidence sufficiently demonstrate the alleged constitutional deprivation." *People v. Dupree*, 2018 IL 122307, ¶ 32. An affidavit is required when a witness is the "only source of this new evidence, [and] without their affidavit[], there [i]s no proof that such evidence actually exist[s] or that it would have been helpful to the defense." *Id*. ¶ 40. As noted, we are satisfied that Parker's book exists and, were he to testify consistently with it, he would help demonstrate Brown's innocence.

¶ 21    In addition, the Act provides that a petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations *or* shall state why the same are not attached." (Emphasis added.) 725 ILCS 5/122-2 (West 2024). "[T]he petitioner who is unable to obtain the necessary affidavits, records, or other evidence must at least explain why such evidence is

---

[3]"An appellate court may take judicial notice of readily verifiable facts if doing so will aid in the efficient disposition of a case, even if judicial notice was not sought in the trial court." (Internal quotation marks omitted.) *Bank of America, N.A. v. Kulesza*, 2014 IL App (1st) 132075, ¶ 21. We take judicial notice of the website cited in Brown's brief as ready verification of the existence of Parker's book.

unobtainable." (Internal quotation marks omitted.) *Collins*, 202 Ill. 2d at 68. Thus, the Act contemplates that the failure to attach supporting evidence may be excused when a petitioner provides a satisfactory explanation for its absence. Here, Brown explained he was unable to obtain an affidavit from Parker due to Parker's incarceration in the Cook County Jail. Since Brown provided sufficient evidence that Parker would provide helpful testimony and an affidavit could be obtained with the assistance of appointed counsel at the second stage, we find that the lack of an affidavit from Parker does not preclude granting leave to file the petition.

¶ 22    The purported messages Brown received from Parker are additional evidence supporting Brown's claim. Parker expressed that he is willing to testify in accordance with his book to exonerate Brown. Since we make no factual or credibility determinations at this stage, we accept documentary evidence as the petitioner alleges. *Robinson*, 2020 IL 123848, ¶ 61 ("Credibility findings and determinations as to the reliability of the supporting evidence are to be made only at a third-stage evidentiary hearing in a successive postconviction proceeding."). Brown attests that Parker sent him the messages through a prison messaging system. At face value, the messages appear consistent with his representation. "The proponent [of documentary evidence] need prove only a rational basis upon which the fact finder can conclude the documents accurately portray what they purport to show." *Andrews v. At World Properties, LLC*, 2023 IL App (1st) 220950, ¶ 32. Thus, we take Brown's representation as true in our analysis.

¶ 23    We further find that Parker's book and messages are newly discovered evidence. A defendant's awareness of a witness before trial does not necessarily preclude their subsequent exonerating statement from being considered newly discovered. *People v. Fields*, 2020 IL App (1st) 151735, ¶ 48 ("[A]n affidavit from a witness may be newly discovered, even when the defense knew of the witness prior to trial."). Rather, their statements will constitute newly discovered

evidence when "no amount of [due] diligence by defendant could have compelled [the witness] to testify." *Id*. (quoting *People v. White*, 2014 IL App (1st) 130007, ¶ 22).

¶ 24 Here, the record establishes that Brown did exercise due diligence regarding Parker. Police reports indicated an ASA had spoken with Parker. The defense's investigator then interviewed Parker, his mother, and his sister. At that time, Parker claimed not to have witnessed Fulton's murder. Nothing demonstrates Brown, his counsel, or the investigator had any basis not to believe him. Thus, they could not have known that Parker witnessed the murder until he published his account many years later. Since Brown's investigator interviewed Parker but Parker withheld his statements at that time, Brown has shown the exercise of due diligence was insufficient to discover those statements.

¶ 25 Undoubtedly, Parker's account is material and not cumulative of other evidence presented at Brown's trial. Parker identifies a different perpetrator of Fulton's murder, and no evidence was presented at Brown's trial of Byars shooting Fulton.

¶ 26 Lastly, we find Parker's account satisfies the conclusive character element. His 2007 affidavit attesting that he did not observe Fulton's shooting does not positively rebut his later account that Byars shot Fulton. The record positively rebuts new evidence only when a trier of fact could never accept its veracity. *Robinson*, 2020 IL 123849, ¶ 60. Parker's 2007 affidavit, however, is merely a prior inconsistent statement, which bears on his credibility. But we do not assess credibility at this stage. A trier of fact could believe Parker's later account. See *People v. Rainey*, 2025 IL App (1st) 231769, ¶ 20 (observing that a trier of fact is tasked with determining which inconsistent statement to believe). Since we must take the allegation that Byars shot Fulton as true—that is, treat it as though a fact finder would believe it—we conclude Parker's account would likely lead to a different result on retrial.

¶ 27    For these reasons, we find Brown made a colorable claim of actual innocence. Accordingly, we reverse the judgment of the circuit court denying Brown's motion for leave to file a successive postconviction petition. We remand this matter to advance to the second stage of postconviction proceedings with appointment of counsel.

¶ 28    Brown requests that we direct this case to be assigned to a new judge on remand. Our authority to order judicial reassignment is limited to the rare circumstance when "the record on appeal clearly reveals bias, the probability of bias, or prejudice on the part of the trial judge." *People v. Class*, 2025 IL 129695, ¶ 37. Brown's request for reassignment is based solely on the trial judge's adverse ruling on his motion for leave to file. But a judge's rulings alone do not demonstrate a bias or prejudice against a litigant. *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). Thus, we deny Brown's request to order reassignment.

¶ 29                              III. CONCLUSION

¶ 30    Based on the foregoing, the judgment of the circuit court is reversed and this matter is remanded to the circuit court for further proceedings.

¶ 31    Reversed and remanded.